## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID HOUSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JANET NAPOLITANO, in her official capacity as | ) |
| Secretary of the U.S. Department of Homeland | ) |
| Security; ALAN BERSIN, in his official capacity as | ) |
| Commissioner, U.S. Customs and Border Protection; | ) |
| JOHN T. MORTON, in his official capacity as Director, | ) |
| U.S. Immigration and Customs Enforcement, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

### NATURE OF THE ACTION

1.      This is an action for declaratory and injunctive relief against officials of the
Department of Homeland Security and its components, Customs and Border Protection and
Immigration and Customs Enforcement.  Plaintiff challenges as a violation of the First and
Fourth Amendments the prolonged seizure of his laptop computer and other electronic devices
and the review, copying, retention, and dissemination of their contents.  Plaintiff also alleges that
the materials seized by the government contain confidential information identifying members
and supporters of a political organization, the Bradley Manning Support Network, and that
Defendants' review, retention, and disclosure of that information intrudes on the right of
associational privacy protected by the First Amendment.  Plaintiff seeks a declaratory judgment
that the search and seizure violated the First and Fourth Amendments, and an injunction
requiring Defendants to return or destroy any seized data in their custody or control and to
inform Plaintiff whether that data has been disclosed to other agencies or individuals.

## JURISDICTION AND VENUE

2.      This case arises under the Constitution of the United States and presents a federal question within this Court's jurisdiction under 28 U.S.C. § 1331.

3.      The Court has authority to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and its inherent equitable powers.

4.      Venue is proper in this district under 28 U.S.C. § 1391(e)(3) because Plaintiff resides in this district.

## PARTIES

5.      Plaintiff David House is a citizen of the United States and a resident of Cambridge, Massachusetts.

6.      Defendant Janet Napolitano is the Secretary of the Department of Homeland Security ("DHS").  Customs and Border Protection ("CBP") and Immigration and Customs Enforcement ("ICE") are agencies of the U.S. government within DHS.  As head of DHS, Secretary Napolitano has authority over all DHS policies, procedures, and practices related to border searches.  Defendant Napolitano is sued in her official capacity.

7.      Defendant Alan Bersin is Commissioner of CBP, and as such has authority over all CBP policies, procedures, and practices related to border searches.  Defendant Bersin is sued in his official capacity.

8.      Defendant John T. Morton is the Director of ICE, and as such has authority over all ICE policies, procedures, and practices relating to border searches.  Defendant Morton is sued in his official capacity.

## FACTUAL ALLEGATIONS

### The Formation of the Bradley Manning Support Network
### and the Targeting of David House by the United States Government

9.      In May 2010, Bradley Manning, a U.S. serviceman deployed in Iraq, was arrested on suspicion of having disclosed restricted material to the organization WikiLeaks.  In July 2010, he was formally charged with accessing and disclosing without authorization classified information,

including "a classified video of a military operation," and fifty Department of State cables. Further charges were brought against him in March 2011, including a charge that he knowingly gave intelligence to the enemy, a capital offense. Following his arrest, Manning was moved to a military detention facility in Quantico, Virginia where he was held in solitary confinement under conditions that have been widely criticized as degrading and humiliating. In April 2011, Manning was transferred to a maximum security facility at Ft. Leavenworth, Kansas.

10.     Manning's arrest followed the April 2010 publication by WikiLeaks of a video titled "Collateral Murder," a recording of a 2007 air attack by U.S. forces in Baghdad in which Iraqi civilians, including two Reuters employees, were killed. WikiLeaks is an organization that provides both a channel and a platform for the public disclosure of information obtained from anonymous sources. Beginning in 2006, WikiLeaks has made available information about the activities of both U.S. and foreign governments and private organizations which are of interest to the public, including documentation of corruption and official misconduct and records of undisclosed government policy. In July 2010, WikiLeaks released a compilation of nearly 77,000 previously unavailable documents about the war in Afghanistan. In October 2010, in coordination with major international media organizations including The New York Times and The Guardian, the group released a collection of almost 400,000 government documents concerning the Iraq war. In November 2010, WikiLeaks, again working in collaboration with major international media organizations, released an additional collection of State Department cables. Rather than release all 251,287 cables it had obtained, WikiLeaks shared them with major international media organizations, and then placed a few hundred documents on its website.

11.     The alleged disclosure of government records by Manning and the suspected connection between Manning and WikiLeaks are the subject of criminal investigations by civilian and military authorities. The Department of Defense has acknowledged that the investigation of Manning by the U.S. Army Criminal Investigation Command is ongoing. The disclosure of classified information is also the subject of an ongoing inquiry by the Department of Justice and a federal grand jury sitting in the Eastern District of Virginia.

12.     Plaintiff David House is a computer programmer and researcher who resides in Cambridge, Massachusetts. Following Manning's arrest, Plaintiff and others joined together in

3

June 2010 to establish the Bradley Manning Support Network ("Support Network").  The Support Network is an unincorporated association of individuals and organizations which describes itself as an "international grassroots effort to help accused whistle blower Pfc. Bradley Manning."  To that end, its stated purposes include: harnessing the outrage of viewers of the "Collateral Murder" video into a coordinated effort in defense of Manning; coordinating international support for Manning; raising funds for Manning's legal defense; and providing support for Manning during his imprisonment.  These objectives are pursued through the Support Network's website and internet presence, through organizing public events, and through private contacts with individuals.  The Support Network is not affiliated with WikiLeaks.

13.     In addition to his role as a founding member of the Support Network, Plaintiff developed the organization's website.  He currently serves on the Support Network's Steering Committee, is active in its work, and regularly communicates with others who are concerned about Manning's treatment and prosecution.  He has also served as one of the organization's primary fundraisers and, in that capacity, has been responsible for meeting potential supporters and soliciting donations to Manning's legal defense.

14.     Although the work of the Support Network and Plaintiff's part in that work consist solely of lawful and constitutionally-protected advocacy and associational activity, Plaintiff has been targeted for surveillance and investigation by various agencies of the U.S. government. Following the formation of the Support Network, Plaintiff has been visited and questioned, both at his home and place of work in Cambridge, by investigators for the U.S. Department of Defense, the Department of State, and the Federal Bureau of Investigation.  Plaintiff has been placed on a watch list which has resulted in his being stopped for questioning and searched each time that he enters the United States following foreign travel.  Beginning in September 2010, Plaintiff has been detained for questioning at the border on each of seven occasions he has re-entered the United States after foreign travel and is routinely questioned on those occasions about his work with the Support Network or his political beliefs and activities.

### The November 3, 2010 Seizure of Plaintiff's Electronic Devices

15. On November 3, 2010, following a vacation in Mexico, Plaintiff arrived at Chicago's O'Hare International Airport where he was to take a connecting flight to Boston. He was carrying his laptop computer, a USB storage device, a video camera containing a memory storage device, and a cellular phone. Upon arrival, Plaintiff passed through a passport control station, collected his baggage, and proceeded to customs, where a CBP officer advised him that his belongings would be searched. The officer examined Plaintiff's computer and noted that it was warm but did not attempt to open it. Plaintiff was then told that he was free to leave.

16. After entering the terminal and starting to walk toward his connecting domestic flight, Plaintiff was stopped by two government agents who stated that they were with the Department of Homeland Security. The agents' nametags identified them as Darin Louck and Marcial Santiago. Agents Louck and Santiago stated that Plaintiff was being detained and would miss his connecting flight. The two agents did not explain the reason or the authority for detaining Plaintiff.

17. Agents Louck and Santiago told Plaintiff that he would have to give them any electronic devices he was carrying. Plaintiff surrendered his computer, USB storage device, video camera, and cellular phone. Plaintiff was not asked for his consent and was not presented with a search warrant. Nor was he provided with any explanation of the purpose or authority for taking his property. The agents took Plaintiff's devices and directed him to be seated and wait. When the agents returned a short time later, they were no longer in possession of the items they had taken.

18. Plaintiff was directed to accompany the two agents to an interrogation room, where he was initially asked a series of questions concerning the security of his computer. He advised the two agents that the computer's hard disk was not encrypted, but that the computer was password protected. When asked, he declined to give them his password, explaining that the password itself would have allowed direct and unauthorized access to research on his employer's server.

19. Agents Louck and Santiago detained Plaintiff for questioning for an extended period. They questioned Plaintiff regarding his association with Bradley Manning, his work for the Support Network, whether he had any connections to WikiLeaks, and whether he had been in

contact with anyone from WikiLeaks during his trip to Mexico. Plaintiff was asked no questions relating to border control, customs, trade, immigration, or terrorism, and at no point did the agents suggest that plaintiff had broken the law or that his computer contained any illegal material. Plaintiff answered their questions truthfully and to the best of his ability.

20.     When Plaintiff was finally allowed to leave, only his cell phone was returned to him. The other items which had been taken, specifically his laptop, USB device, and video camera, were not returned. Plaintiff was given a receipt listing the items that had been seized, indicating that "R. Hart, SAC CHI ICE" had taken custody of them. He was told that his devices would be returned by FedEx within a week.

21.     On December 21, 2010, 48 days after the agents seized Plaintiff's electronic devices, the devices remained in the government's custody. On that date, Plaintiff, through counsel, sent a letter by facsimile to DHS, CBP, and ICE requesting that his electronic devices be returned to him immediately. He also requested that he be provided with documentation of the chain of custody of any copies made of the information contained on his devices and documentation of their destruction.

22.     On December 22, 2010, Plaintiff's electronic devices were returned to him by mail. Although Plaintiff had been informed they were taken into custody by "R. Hart, SAC CHI ICE," his electronic devices were sent to him from the "DHS CIS New York District Office."

23.     In a letter to Plaintiff's counsel dated December 30, 2010, general counsel for ICE noted that the devices had been returned but did not indicate whether any information derived from those electronic devices had been copied, what agencies or individuals were given any copies made, and whether any such copies had been destroyed.

### The Search, Retention, and Dissemination
### of the Contents of Plaintiff's Electronic Devices

24.     Formal policy statements issued in 2009 by both CBP and ICE purport to authorize border agents to detain an international traveler's "electronic devices," broadly defined as devices which "contain information." CBP Directive No. 3340-049, "Border Search of Electronic Devices Containing Information" (Aug. 20, 2009); ICE Directive No. 7-6.1, "Border Searches of Electronic Devices" (Aug. 18, 2009). These policies permit government officials to read and/or analyze the contents of such devices without any basis for suspicion of wrongdoing.

This authority extends to any information which may they may discover, without regard to whether that information is personal, confidential, or even privileged.

25.     Both CBP and ICE policies permit the detention of seized items after the traveler has left the border for purpose of further reading or analysis.  The policies also authorize the sharing of a traveler's devices or information obtained from those devices with other government agencies or private parties for the purpose of obtaining assistance in the search and analysis of their contents.

26.     Although the CBP and ICE Policies purport to limit retention of information gleaned from a traveler's electronic devices, retention is permitted whenever the information is deemed "relevant" to immigrations, customs, or any other law enforcement matter, and any retained information may be shared with federal, state, local, and foreign law enforcement agencies.

27.     Given his placement on a watch list, his interrogation by DHS agents concerning the Bradley Manning Support Network, the length of time his electronic materials were held following their detention on November 3, 2010, the transfer of those materials from Chicago to New York, and the nature of the ongoing government investigations, Plaintiff alleges on information and belief that agents of Defendants, acting pursuant to established CBP and ICE policies, reviewed and copied the contents of his electronic devices, that this information has been retained by Defendants, and that it has been disclosed to and retained by other government agencies.

28.     Plaintiff's computer and other electronic devices contained private and sensitive materials which he did not intend to expose to view by others without his consent.  This included personal and private information and information concerning his work on behalf of the Support Network which he chose to record or store in these devices.

29.     The information stored on the devices taken from the Plaintiff included his personal e-mail communications covering a period of several years, including messages sent to and from family members and friends and messages concerning employment related matters, records of his personal finances, computer programming work in progress, and passwords allowing access to his bank account, his workplace computer, and secure communications websites.

30.     The devices taken from the Plaintiff  also contained information concerning the Support Network including the complete Support Network mailing list, confidential

communications between members of the Steering Committee about strategy and fund-raising activities, the identity of donors, lists of potential donors and their ability to contribute, and notes on meetings with donors including personal observations about those donors.

31.     At no point during the seizure, transfer, search, and prolonged detention of Plaintiff's electronic devices or the copying, dissemination, and retention of information derived from them did the government have reasonable suspicion to believe that Plaintiff's devices contained any material constituting a violation any law respecting customs, immigration, or terrorism.

**The Seizure of Privileged Support Network Materials**

32.     The privacy of certain information concerning the operation and supporters of the Bradley Manning Support Network which has been accessed, retained, and disseminated by Defendants is essential to the effective operation of the organization.  This includes, without limitation, internal communications concerning strategy and organization, and information concerning individual supporters and donors and potential supporters and donors.

33.     The seizure and retention of this information and its dissemination to other governments, agencies, private entities, individuals, or the public at large will chill the associational rights of the Bradley Manning Support Network and its supporters, including the plaintiff, by exposing them to harassment or reprisals, by deterring open discussion of political strategy, and by causing the withdrawal of lawful support and deterring such support in the future.

34.     The Manning prosecution is a highly charged and politically controversial issue.  The President of the United States has publicly commented on the case, stating that Manning has broken the law.  Manning and his supporters, along with WikiLeaks, have been criticized for posing a threat to national security and accused by some of treason.  Plaintiff and other individuals who have publicly supported Manning have been identified by name and targeted for retaliation.

35.     Because some supporters and contributors to the Support Network will contribute to the Manning defense or otherwise support the work of the Support Network only if their support can remain anonymous, the retention, disclosure, and/or use by Defendants and other government agencies of information concerning the identity of individual supporters and donors

8

and of potential supporters and donors will materially interfere with lawful activities and association in support of Manning's defense.

## FIRST CAUSE OF ACTION

36.     The search and prolonged detention of Plaintiff's electronic devices, and Defendants' continued retention and dissemination of the information they contained, are unreasonable and violate the Fourth Amendment to the United States Constitution.

## SECOND CAUSE OF ACTION

37.     The search and prolonged detention of Plaintiff's electronic devices, and Defendants' continued retention and dissemination of the information they contained, violate the First Amendment to the United States Constitution.

## THIRD CAUSE OF ACTION

38.     The interception and, more particularly, the retention and dissemination of information in Plaintiff's computer and other electronic devices regarding the organization, work, and supporters and donors of the Bradley Manning Support Network violate the right of associational privacy guaranteed by the First Amendment to the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.  Declare that the prolonged seizure of Plaintiff's laptop computer and other electronic devices and the review, copying, retention, and dissemination of their contents without reasonable suspicion violates the Fourth and First Amendments to the United States Constitution.

B.  Enter preliminary and permanent injunctions requiring Defendants to return to Plaintiff all information in their custody or control obtained from Plaintiff's electronic devices and, to the extent the information cannot be returned, to expunge or otherwise destroy that information.

C.  Enter preliminary and permanent injunctions requiring Defendants to disclose to Plaintiff (1) whether any information obtained from Plaintiff's electronic devices has been disclosed or disseminated to any other agencies, organizations, individuals, or foreign governments, including but not limited to those agencies from which CBP and/or ICE sought technical assistance in accessing the information; (2) when and in what form any such disclosure or dissemination occurred; and (3) the specific data or information which was disclosed or disseminated, and to whom.

D.  Award Plaintiff reasonable attorneys' fees and costs.

E.  Grant any other relief the Court deems appropriate.


DAVID HOUSE
By his attorneys,


_____/s/ Catherine Crump_____
Catherine Crump
ccrump@aclu.org
(Pro Hac Vice Pending)
Speech, Privacy and Technology Project
American Civil Liberties Union
125 Broad Street, 17th floor
New York, New York 10004
(212) 549-2500


_____/s/ John Reinstein_____
John Reinstein, BBO # 416120
jreinstein@aclum.org
Laura Rótolo, BBO # 665247
lrotolo@aclum.org
Alexia De Vincentis, BBO # 679397
adevincentis@aclum.org
American Civil Liberties Union
   Of Massachusetts
211 Congress Street
Boston, Massachusetts 02110
(617) 482-3170


Dated:  May 13, 2011