**UNITED STATES DISTRICT COURT
FOR DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| DAVID HOUSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JANET NAPOLITANO, in her official capacity as | ) | |
| Secretary of the U.S. Department of Homeland | ) | |
| Security; ALAN BERSIN, in his official capacity as | ) | Case No. |
| Commissioner, U.S. Customs and Border | ) | 1:11-cv-10852-DJC |
| Protection; JOHN T. MORTON, in his official | ) | |
| capacity as Assistant Secretary of Homeland | ) | |
| Security for U.S. Immigration and Customs | ) | |
| Enforcement, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PROPOSED PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY
JUDGMENT**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................ ii

**INTRODUCTION**.............................................................................................................1

**ARGUMENT**...................................................................................................................2

    I.    DEFENDANTS' ACTIONS VIOLATED THE FOURTH AMENDMENT ...............2

        A.    The Suspicionless Search Of Mr. House's Electronic Devices Violated His Fourth Amendment Rights.....................................................................................2

        B.    The 49-Day Seizure Of Mr. House's Electronic Devices Violated His Fourth Amendment Rights .......................................................................................6

    II.    DEFENDANTS' ACTIONS VIOLATED THE FIRST AMENDMENT ....................9

        A.    The Seizure Of Plaintiff's Materials Was Not Incidental To A Valid Border Search......................................................................................................9

        B.    The Allegations Of The Complaint Are Sufficient To Show Interference With Plaintiff's Associational Rights ..........................................................................11

    III.    PLAINTIFF HAS A CLAIM FOR IMPROPER DISSEMINATION AND RETENTION..............................................................................................................14

**CONCLUSION** .............................................................................................................16

i

## TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................................................. 11, 12

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico,* 457 U.S. 853 (1982) .............. 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 12

*Caron v. United States*, 548 F.2d 366 (1st Cir. 1976) ................................................................ 8

*Clemons v. Crawford*, 585 F.3d 1119 (8th Cir. 2009) ................................................................ 4

*Ducharme v. United States*, 850 F.2d 27 (1st Cir. 1988) ........................................................... 8

*Ex Parte Jackson*, 96 U.S. 727 (1877) ..................................................................................... 5

*Florida v. Wells*, 495 U.S. 1 (1990) ........................................................................................ 6

*Garnier v. Rodriguez*, 506 F.3d 22 (1st Cir. 2007) .................................................................... 11

*Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508 (1st Cir. 2009) ..................................... 11

*Haley v. City of Boston*, 657 F.3d 39 (1st Cir. 2011) ............................................................. 12, 13

*Illinois v. Krull*, 480 U.S. 340 (1987) ..................................................................................... 15

*Kentucky v. King*, 131 S. Ct. 1849 (2011) ............................................................................... 5

*Mihos v. Swift,* 358 F.3d 91 (1st Cir. 2004) ............................................................................. 11

*Mora v. United States*, 955 F.2d 156 (2d Cir. 1992) ................................................................. 14

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) .................................... 11

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1 (1st Cir. 2011) .............................................. 12

*Schmerber v. California*, 384 U.S. 757 (1966) .......................................................................... 6

*Swanson v. Citibank*, 614 F.3d 400 (7th Cir 2010) .................................................................... 12

*Terry v. Ohio*, 392 U.S. 1 (1968) ............................................................................................ 6

*United States v. 12 200-Ft. Reels of Super 8mm Film*, 413 U.S. 123 (1973) ............................... 5

*United States v. Arnold*, 533 F.3d 1003 (9th Cir. 2008) ............................................................ 5

*United States v. Braks*, 842 F.2d 509 (1st Cir. 1988) ............................................................. 2, 4

*United States v. Cardona-Sandoval*, 518 F.3d 13 (1st Cir. 2008) (per curiam) .......................... 14

*United States v. Chambers*, 192 F.3d 374 (3d Cir. 1999) ............................................................ 14

*United States v. Cintron Moreno*, 6 Fed. Appx. 23 (1st Cir. 2001) (per curiam) ......................... 14

*United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 (9th Cir. 2010) ............. 15, 16

*United States v. Flores-Montano*, 541 U.S. 149 (2004) ............................................................. 3, 4

*United States v. Gerber*, 994 F.2d 1556 (11th Cir. 1993) ............................................................... 7

*United States v. Hernandez*, 183 F. Supp. 2d 468 (D.P.R. 2002) .................................................... 7

*United States v. Ickes*, 393 F.3d 501 (4th Cir. 2005) ..................................................................... 5

*United States v. Irving*, 452 F.3d 110 (2d Cir. 2006) ..................................................................... 6

*United States v. Montoya de Hernandez*, 473 U.S. 531 (1985) ....................................................... 7

*United States v. Onyema*, 766 F. Supp. 76 (E.D.N.Y. 1991) .......................................................... 7

*United States v. Place*, 462 U.S. 696 (1983) ................................................................................. 7

*United States v. Ramsey*, 431 U.S. 606 (1977) ............................................................................... 5

*United States v. Seljan*, 547 F.3d 993 (9th Cir. 2008) .................................................................... 3

*United States v. Stewart*, 715 F. Supp. 2d 750 (E.D. Mich. 2010) .................................................. 6

*United States v. Triumph Capital Grp., Inc.*, 211 F.R.D. 31 (D. Conn. 2002) ............................... 7

*United States v. Whitted*, 541 F.3d 480 (3d Cir. 2008) ................................................................... 4

*Whren v. United States*, 517 U.S. 806 (1996) ............................................................................... 11

## Other Authorities

71 Fed. Reg. 70413 (Dec. 4, 2006) ............................................................................................. 10

72 Fed. Reg. 48320 (Aug. 23, 2007) ............................................................................................ 10

## Rules

Fed R. Crim. P. 41(g) ............................................................................................................. 14, 15

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 10, 11

Fed. R. Civ. P. 56(a) ...................................................................................................................... 8

**INTRODUCTION**

The sum and substance of Defendants' position in this litigation is that the government may search international travelers' electronic devices without any restraint -- it may seize travelers' laptops and cell phones, search them fully for as long as it likes, and do so without any reason to believe that a search will turn up evidence of wrongdoing. The Constitution does not sanction such a sweeping claim of authority and courts are not so powerless that they are forbidden from scrutinizing the actions of border agents. Defendants violated Mr. House's Fourth Amendment rights when they searched his electronic devices and seized most of them for 49 days without any reasonable suspicion of wrongdoing whatsoever. Searches of expressive materials are the sort of invasive and intrusive searches that can only be carried out when the government has reasonable suspicion of wrongdoing. The materials on Mr. House's computer included his personal and work correspondence, his financial information, and materials discussing the Bradley Manning Support Network. Americans do not expect, and should not have to endure as a cost of international travel, the suspicionless rummaging through of their personal papers by any curious customs agent. Moreover, the government's seizure of Mr. House's electronic devices for 49 days absent reasonable suspicion is an independent Fourth Amendment violation. As the Supreme Court has recognized, seizing personal possessions from travelers is a serious burden on an individual's possessory and liberty interests.

Defendants also violated Mr. House's First Amendment rights. The First Amendment is a restriction on the exercise of the government's power. There is no customs or border exception. The protection the amendment affords to the privacy of associational affiliation cannot be overridden simply because a person is located at the border and any government incursion must therefore be justified by a compelling interest. The argument that the search and seizure of

1

Plaintiff's electronic materials was "incidental" ignores the allegations of the Complaint that the government's actions were carried out for the purpose of inquiry into the activities of the Bradley Manning Support Network. Moreover, even if the original seizure could be justified, the retention and disclosure of the information to other agencies cannot.

Finally, it is well within this Court's power to order Defendants to reveal what they did with the data they copied from Mr. House's electronic devices, and to order the destruction of data that they have kept. Courts have required the government to take these steps in similar cases, and this Court should do the same here.

Defendants' motion to dismiss should be denied.

## ARGUMENT

### I.   DEFENDANTS' ACTIONS VIOLATED THE FOURTH AMENDMENT.

**A. The Suspicionless Search Of Mr. House's Electronic Devices Violated His Fourth Amendment Rights.**

Defendants ask this Court to dismiss Mr. House's claim that the search of his electronic devices violated the Fourth Amendment because, in their view, electronic devices are "nothing more than a means to store information," Defs.' Reply to Pl.'s Opp'n to their Mot. to Dismiss, or in the Alternative, for Summ. J. ("Defs.' Reply Br.") 2. This is akin to arguing that homes are "nothing more than a means to store effects," or that postal mail is "nothing more than a means to store correspondence"—and yet the government must obtain a warrant to search homes and mail. Not even Defendants dispute that reviewing the contents of an electronic device is a "search." The question, rather, is whether it is the sort of invasive, intrusive search that triggers a reasonable suspicion requirement. *United States v. Braks*, 842 F.2d 509, 511 (1st Cir. 1988).

It is exactly such a search. A review of an individual's personal expressive materials provides an intimate view of his or her thoughts and beliefs. It is an intrusion into a person's

2

mind, an invasion sufficiently deleterious to privacy that reasonable suspicion is the constitutional minimum. Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, or in the Alternative, for Summ. J. ("Pl.'s Br.") 11-19. "What makes papers special-and the reason they are listed alongside houses, persons and effects-is the ideas they embody, ideas that can only be seized by reading the words on the page." *United States v. Seljan*, 547 F.3d 993, 1017 (9th Cir. 2008) (Kozinski, J. dissenting). Contrary to Defendants' suggestion, Defs.' Reply Br. 4-5, there is a constitutionally meaningful difference between expressive materials and non-expressive effects such as clothing and shoes.

Defendants argue that a reasonable suspicion requirement cannot apply to the search of Mr. House's electronics because that would involve "the kind of line-drawing that the Supreme Court has already rejected," Defs.' Reply Br. 3, but Defendants' assertion rests on a faulty reading of *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004). In *Flores-Montano*, the Court held that removal and disassembly of a vehicle's gas tank at the border to examine its contents did not require reasonable suspicion, writing that:

> [T]he reasons that might support a requirement of some level of suspicion in the case of highly intrusive searches of the person-dignity and privacy interests of the person being searched-simply do not carry over to vehicles. Complex balancing tests to determine what is a "routine" search of a vehicle, as opposed to a more "intrusive" search of a person, have no place in border searches of vehicles.

*Id.* at 152. The Court was forbidding lower courts from subdividing the universe of vehicle searches at the border into those vehicle searches that require reasonable suspicion and those that do not. The Court said nothing about what standard might be necessary to carry out other types of searches. Moreover, a ruling that searches of expressive materials require reasonable suspicion requires no "complex balancing" at all, but rather the application of a single, uniform standard for all electronic device searches:  the reasonable suspicion standard.

3

Nor did the Court's decision in *Flores-Montano* undermine the First Circuit's analysis in *Braks*, 842 F.2d 509, as Defendants suggest, Defs.' Reply Br. 3. In *Braks*, the Court held that the key factor in determining whether a search is non-routine is "[t]he degree of invasiveness or intrusiveness," 842 F.2d at 511. Other courts have continued to apply this test after *Flores-Montano*. *See, e.g.*, *United States v. Whitted*, 541 F.3d 480, 485 (3d Cir. 2008) ("Courts have focused on the privacy interest and the intrusiveness and indignity of the search to distinguish between routine and nonroutine searches."). There is no need for this Court to depart from the First Circuit's well-settled and binding precedent.

While Defendants maintain that the category of "personally invasive" searches only extends to searches such as strip searches and body cavity searches, nothing in Supreme Court or First Circuit case law suggests that only searches involving a physical intrusion into a person's body can trigger a reasonable suspicion requirement, and the Third Circuit has expressly rejected this argument, as should this Court. In *Whitted*, 541 F.3d at 489, the Third Circuit held that a search of a passenger's cruise ship cabin was a non-routine search requiring reasonable suspicion "because of the high expectation of privacy and level of intrusiveness." Mr. House had every reason to expect privacy in his personal papers, which included correspondence with friends and employers as well as financial information. Compl. ¶ 29. Searches of expressive materials are highly intrusive and should not occur on a purely suspicionless basis.[1]

Defendants contend that an electronic device containing expressive materials is not meaningfully distinguishable from a suitcase full of books and papers. Defs.' Reply Br. 4. But

---

[1] While Defendants fault Plaintiff for not alleging in his Complaint that the search was conducted in a "particularly offensive manner," Defs.' Reply Br. 4, Plaintiff is not obligated to allege particular legal theories or phrases in a complaint but rather the facts giving rise to those theories. *See Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) ("[W]ell-pleaded facts, not legal theories or conclusions, determine [the] adequacy of [t]he complaint." (citations omitted)).

neither the Supreme Court nor the First Circuit has held that the government may examine any expressive materials, including books and papers, at the border absent reasonable suspicion. Defendants cite to *United States v. 12 200-Ft. Reels of Super 8mm Film*, 413 U.S. 123, 125 (1973), but that case involved a First Amendment facial challenge to a statute that prohibited the importation of obscene materials for personal use. The claimant never argued that the government's search was unconstitutional because it was not predicated on reasonable suspicion, so the Court never addressed this question. To the contrary, the Supreme Court has suggested that the "full panoply of Fourth Amendment requirements" might be applicable where government searches implicate expressive rights or threaten to "chill" expressive conduct. *United States v. Ramsey*, 431 U.S. 606, 624 n.18 (1977). To be sure, the Fourth and Ninth Circuits have rejected a reasonable suspicion standard, but this Court need not make the same mistake. Defs.' Reply Br. 5 (citing *United States v. Arnold*, 533 F.3d 1003, 1010 (9th Cir. 2008); *United States v. Ickes*, 393 F.3d 501, 507 (4th Cir. 2005)).

Defendants suggest that the possibility that someone could carry terrorist plans on an electronic device justifies purely suspicionless searches, but this argument proves too much and is contrary to the analytical framework the Court has established for evaluating Fourth Amendment claims. Defs.' Reply Br. 6. It is possible to conceal terrorist plans in postal mail or in the home, and yet the Supreme Court has held that a warrant based on probable cause is required for both of these types of searches. *Ex Parte Jackson*, 96 U.S. 727 (1877) (postal mail); *Kentucky v. King*, 131 S. Ct. 1849 (2011) (home). The Fourth Amendment's protections do not evaporate whenever it is theoretically possible that a search would turn up evidence of a crime.[2]

---

[2] To continue the analogy, any person on the street could be carrying evidence of a crime, but the Fourth Amendment imposes limitations on which people the police can lawfully stop and search.

5

*Cf. Schmerber v. California*, 384 U.S. 757, 770-71 (1966) (stating that a blood test had to satisfy Fourth Amendment reasonableness analysis, even when the search was conducted as part of a lawful arrest: "The interests in human dignity and privacy which the Fourth Amendment protects forbid any such [bodily] intrusions on the mere chance that desired evidence might be obtained."). Rather, as the Second Circuit put it, "the level of intrusion into a person's privacy is what determines whether a border search is routine." *United States v. Irving*, 452 F.3d 110, 123 (2d Cir. 2006). For all of the reasons stated in Plaintiff's opposition memorandum, the search of Mr. House's electronic devices required reasonable suspicion, and notably absent from Defendants' papers is any claim that they can meet this standard. Defendants' motion to dismiss Mr. House's Fourth Amendment claims should be denied.[3]

### B. The 49-Day Seizure Of Mr. House's Electronic Devices Violated His Fourth Amendment Rights.

The Fourth Amendment prohibits the government from depriving Mr. House of his electronic devices for the extended period of 49 days without reasonable suspicion. *See United States v. Stewart*, 715 F. Supp. 2d 750, 754-55 (E.D. Mich. 2010) (noting that the extended length of a seizure can render it an "unreasonable intrusion"). Defendants persist in arguing that "[t]here is no hard and fast rule for how long the Government may detain items that it has *not*

---

*Terry v. Ohio*, 392 U.S. 1, 19 (1968) ("We therefore reject the notions that the Fourth Amendment does not come into play at all as a limitation upon police conduct if the officers stop short of something called a 'technical arrest' or a 'full-blown search.'") Also, any container in an arrestees' possession could contain evidence of the crime at issue, but the Fourth Amendment still requires police departments to establish "standardized criteria" for opening containers during inventory searches. *Florida v. Wells*, 495 U.S. 1, 4 (1990) (citing "the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence").

[3] Defendants misunderstand Plaintiff's argument when they assert that Plaintiff's allegations about the government's subjective motivations are irrelevant to his Fourth Amendment claims. Defs.' Reply Br. 6. Plaintiff is not advancing such an argument. Instead, Plaintiff argues that Defendants' singling out of Mr. House because of his First Amendment-protected activities violated his First Amendment rights. See Point II *infra*.

finished searching when they are detained at the border," Defs.' Reply Br. 7, but this argument that the government may take as long as it likes to search devices is not tenable in light of the Supreme Court's ruling in *United States v. Place*, 462 U.S. 696, 699, 708-10 (1983). In *Place*, the Court acknowledged that seizing luggage in a person's immediate possession "intrudes on both the suspect's possessory interest in his luggage as well as his liberty interest in proceeding with his itinerary." *Id.* at 708-09. The Court held that probable cause was the appropriate standard for the 90-minute detention of luggage in that case. The 49-day detention of Mr. House's devices implicated the exact same liberty and possessory interests and, given its vastly greater duration, should trigger a reasonable suspicion requirement even at the international border. *See United States v. Montoya de Hernandez*, 473 U.S. 531, 542-44 (1985) (citing *Place* when considering whether a detention at the border was reasonable).

All of the cases Defendants cite are irrelevant because each addresses whether the government may continue to search items seized pursuant to a valid warrant after the warrant expires. Defs.' Br. 7 (citing *United States v. Gerber*, 994 F.2d 1556 (11th Cir. 1993); *United States v. Hernandez*, 183 F. Supp. 2d 468 (D.P.R. 2002); *United States v. Triumph Capital Grp., Inc.*, 211 F.R.D. 31 (D. Conn. 2002)). Such searches, because they are preceded by a neutral magistrate's determination that the government has satisfied the probable cause requirement, do not raise the same serious threat to privacy as the purely suspicionless border search unchecked by court involvement that the government conducted here. *Cf. United States v. Onyema*, 766 F. Supp. 76, 78, 83 (E.D.N.Y. 1991) (holding that the prolonged detention of an individual at the international border required a *judicial* determination of reasonable suspicion, and explaining that "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw

7

from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.").

Furthermore, if this Court decides to analyze whether the length of the government's seizure of Mr. House's electronic devices was commensurate with its need, the summary judgment standard precludes it from accepting Defendants' facts and discrediting Plaintiff's facts, as Defendants propose. Defs.' Reply Br. 7-10; Fed. R. Civ. P. 56(a) (summary judgment only appropriate where there is no genuine issue of material fact). Defendants' argument appears to be that only ICE agents have the expertise required to opine on whether ICE agents acted reasonably, Defs.' Reply Br. 9 (suggesting the Court should discredit Plaintiff's expert because "Mr. Stamos has never worked at ICE; indeed, his resume does not indicate any work on behalf of the Government."). In other words, Defendants propose that rather than measure the performance of ICE agents against objective professional standards in the relevant field, the question should be whether their performance was "good enough for government work." This has never been the law. For example, in malpractice claims, the medical care provided by government doctors is judged by the standard of reasonable care, not a special standard for government medical care. *See Ducharme v. United States*, 850 F.2d 27 (1st Cir. 1988) (finding evidence insufficient to support claim that Veterans Administration hospital was negligent in its care); *Caron v. United States*, 548 F.2d 366, 370 (1st Cir. 1976) (negligence standard is whether "Government doctors did not use that degree of diligence and skill ordinarily exercised by the average physician in the same locality"). Defendants do not call into question Mr. Stamos's qualifications as an expert in the field of forensic analysis, and they point out that he has been retained as an expert by companies such as Google. Defs.' Br. 9 n.6. Moreover, if plaintiffs suing

8

the government are required to find a government agent to testify on their behalf, or an expert whose livelihood depends on having the government as a client, then plaintiffs would never be able to call upon expert testimony in lawsuits to vindicate their constitutional rights.[4]

Defendants' motion to dismiss Plaintiff's Fourth Amendment claim should be denied.

## II.   DEFENDANTS' ACTIONS VIOLATED THE FIRST AMENDMENT.[5]

### A.   The Seizure Of Plaintiff's Materials Was Not Incidental To A Valid Border Search.

Defendants meet Plaintiff's associational privacy claim first by arguing that the seizure of privileged information was simply incidental to a valid border search and the seizure of any information about the Support Network was serendipity, a course of events for which Plaintiff bears responsibility. Mr. House, they say, "chose" to bring his electronic devices with him when he crossed the border. Defs.' Reply Br. 11. He just *happened* to be "referred . . . for secondary inspection [which] included a thorough search of all the items he was carrying," and the information about his political work and association, which they now imply they were not specifically seeking, just *happened* to be available. Defs.' Reply Br. 10-11.

But this is not what is alleged in the Complaint. Plaintiff did not just happen to be referred for secondary inspection. He was stopped for a reason. The Complaint alleges that at least three U.S. government agencies outside of DHS had been looking at Mr. House's work with the Support Network. Compl. ¶ 14. Mr. House had been placed on a lookout or watch list, which

---

[4] In their brief, Defendants pointed out that Mr. Stamos's declaration was not signed under penalty of perjury. Plaintiff has resubmitted Mr. Stamos's declaration with that language included. *See Attachment*. The declaration is otherwise identical to the one submitted together with Plaintiff's opposition brief.

[5] Defendants have responded only to Plaintiff's First Amendment claim based on the right of associational privacy. Plaintiff's separate First Amendment claim asserting protection for his expressive materials, Pls.' Mem. in Opp. at 29-30, is not addressed in Defendants' Reply.

had flagged his involvement with the Support Network. [6] *Id.* Thus, when he arrived in Chicago, the interrogation focused specifically on his involvement in political activities and, in particular, his affiliation with the Manning Support Network. Compl. ¶ 19. His materials were seized and detained for forensic examination and copying of their contents. Decl. of Robert Marten, Defs.' Concise Statement of Material Facts Pursuant to Local Rule 56.1 ("Defs.' Facts") Ex. 4, ¶¶ 5, 7, July 27, 2011, ECF No. 12-1. The extended detention happened for a reason, about which there is a dispute. And finally, the Complaint alleges, the information obtained from the devices by ICE has been disclosed to and retained by other government agencies.[7] Compl. ¶ 27. That too happened for a reason.

---

[6] This watch list is described in Plaintiff's submission as the TECS II, which "the relevant government authorities" catalogued by Defendants identify as a record of any inspection conducted at the border. Other, and perhaps more relevant, government authorities not cited by Defendants show that the TECS II system is the vehicle for an expansive system of watch lists and monitoring of travelers by DHS. CBP tracks international airline passengers through the Advance Passenger Information System (APIS), which requires commercial carriers to provide CBP with passenger manifests prior to arrival in the United States. CBP, Advance Electronic Transmission of Passenger and Crew Member Manifests for Commercial Aircraft and Vessels, 72 Fed. Reg. 48320 (Aug. 23, 2007). Passenger manifests are screened using the Interagency Border Inspection System (IBIS), a multi-agency database of lookout information used by CBP to screen individuals entering the United States which combines lookout or watch list information from 27 agencies into the TECS II database. Participating agencies include the DOJ Office of the Inspector General. Immigration and Naturalization Service's Premium Processing Program, Report No. 03-14 (2003), *available at* http://www.justice.gov/oig/reports/INS/a0314/intro.htm. The information in TECS/IBIS identifies people, among others, "that may be of interest to the law enforcement community." DHS Background Check Services System of Records, 71 Fed. Reg. 70413, 70414 (Dec. 4, 2006). *See generally*, William J. Krouse, Cong. Research Serv., RL32366, Terrorist Identification, Screening, and Tracking Under Homeland Security Presidential Directive 6 (2004).

[7] Plaintiff notes again that the affidavits filed by Defendants do not address the issue of whether the information was disclosed to other agencies. Rather, they contend that the issue is "not material to Plaintiff's claims." Defs.' Reply Br. 16 n.14. For purposes of Defendants' Rule 12(b)(6) motion, it is, therefore, admitted. And it is material, both to the need to afford complete relief, see Point III, *infra,* and to the consideration of Plaintiff's First Amendment claims.

Under these circumstances, it is not sufficient to argue that customs and immigration officials were simply conducting a permissible border search. Where the alleged reason for the search was to intrude on areas protected by the First Amendment, that reason matters. While Defendants correctly cite *Whren v. United States*, 517 U.S. 806 (1996), for the proposition that the subjective motivation of government officials is not relevant to the consideration of a Fourth Amendment claim, that is not the case when a claim arises under the First Amendment. *See Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico,* 457 U.S. 853, 871 (1982) (whether school board's removal of books from school library violated the First Amendment depended on the motivation of the board members' actions); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977). There are scores of cases that apply this general principal to situations that involve broad official discretion. *See, e.g.*, *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508 (1st Cir. 2009) (politically motivated revocation of insurance license); *Mihos v. Swift,* 358 F.3d 91 (1st Cir. 2004) (governor's termination of member of independent authority motivated by retaliation for votes). And motivation is a question that is generally not appropriate to decide on the basis of a Rule 12(b)(6) motion. *Cf. Garnier v. Rodriguez*, 506 F.3d 22, 27 (1st Cir. 2007) (explaining that, in a First Amendment retaliation case, "the causation or motivation element normally presents a factfinding responsibility for the jury" (internal quotation marks and citation omitted)).

## B. The Allegations Of The Complaint Are Sufficient To Show Interference With Plaintiff's Associational Rights.

Defendants have supplemented their argument for dismissal under *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), contending that Mr. House had an "admitted association" with Mr. Manning that provides an "obvious alternative explanation" for the interest of various government agencies, presumably including DHS and its constituent agencies. Defs.' Reply Br. 14. Thus,

11

they argue, there is an "equally plausible" explanation for the course of events leading to the seizure of Mr. House's electronic devices. *Id.* at 15. This argument, unsupported by citation to any legal authority, would require the court to reach beyond the allegations of the complaint and to engage in speculation about the contested facts concerning the government's pursuit of information about the Support Network. This argument once again misrepresents the *Iqbal* standard and ignores the First Amendment context in which Mr. House was questioned.

Under *Iqbal*, a complaint must only state a claim that is plausible on its face. That another equally plausible explanation is conceivable does not warrant dismissal at the pleading stage. "[T]he plausibility standard is not akin to a probability requirement." *Iqbal*, 129 S. Ct. at 1949 (internal quotation marks and citation omitted). In this context, plausibility "does not imply that the district court should decide whose version to believe, or which is more likely than not . . . . In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir 2010). The Court should not "attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if ... a recovery is very remote and unlikely.'" *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotation marks omitted)).

The First Circuit recently addressed this issue in *Haley v. City of Boston*, 657 F.3d 39 (1st Cir. 2011). There, in response to a complaint alleging that city officials had unlawfully failed to turn over exculpatory evidence, resulting in a wrongful conviction for which the plaintiff spent 34 years in prison, the city contended that there was a lawful explanation for what had happened. The court rejected the defendants' effort to have the case dismissed at the pleading stage, noting that "this is neither the time nor the place to resolve the factual disputes between the parties.

12

Whether Haley can prove what he has alleged is not the issue. At this stage of the proceedings, we must take the complaint's factual allegations as true, and those allegations paint an ugly but plausible picture." *Id.* at 52 (finding that a plaintiff met pleading requirements under *Iqbal* regarding municipal liability).

Here, the complaint fairly alleges that Mr. House was targeted for surveillance and investigation because of his involvement in the Bradley Manning Support Network and that his electronic devices were seized for the purpose of obtaining information about Plaintiff's work with the Bradley Manning Support Network. Defendants argue that questioning Plaintiff was not illegal and that there could have been a permissible law enforcement purpose for that questioning.[8] Defendants have not provided any evidence that this indeed was the case, but, instead, merely posed the possibility.[9] This presents the court with two different views of the facts, but, as in *Haley*, this is not the time to resolve the factual disputes between the parties.

The possibility that the government's interest in Mr. House was not prompted by his political beliefs and activities does not make the allegations of the complaint, which must be taken in the light most favorable to him, any less plausible. It is not up the court, at the motion to dismiss stage, to engage in the balancing of two plausible theories. Even if the possibility exists that the seizure of Mr. House's personal electronic equipment was based solely on legal motivations, the Complaint fairly sets out a plausible theory that he was stopped for reasons

---

[8] Defendants argue that it is not a violation of the law to question an individual in the course of an investigation. Plaintiff does not suggest otherwise. The violation of the First Amendment occurred when Plaintiff's materials were confiscated by agents of Defendants based on his lawful affiliation and work with the Bradley Manning Support Network.

[9] That this information is uniquely available to Defendants should not require extensive comment.

13

relating to his protected First Amendment activity. The Complaint should not be dismissed without an adequate factual record.

## III.    PLAINTIFF HAS A CLAIM FOR IMPROPER DISSEMINATION AND RETENTION.

The relief Plaintiff requested includes an injunction requiring Defendants to reveal to whom they disclosed or disseminated information contained in his electronic devices. Compl. at 10. Defendants claim that they cannot be compelled to reveal what they did with the information they seized, but in fact courts require this of the government on a routine basis. For example, Federal Rule of Criminal Procedure 41(g) grants criminal defendants the right to have property returned to them after it is no longer needed as evidence. In deciding Rule 41(g) motions, the First Circuit has refused to accept the government's "bare assertion" that it destroyed the property or gave it to a third party, and instead has required the government to provide evidence of what it did with the property. *United States v. Cardona-Sandoval*, 518 F.3d 13, 16-17 (1st Cir. 2008) (per curiam). *See also United States v. Cintron Moreno*, 6 Fed. Appx. 23 (1st Cir. 2001) (per curiam); *United States v. Chambers*, 192 F.3d 374, 377 (3d Cir. 1999); *Mora v. United States*, 955 F.2d 156, 159 (2d Cir. 1992). By analogy, it is within this Court's power to require the government to reveal to Mr. House with whom it has shared his information. This is particularly the case because Mr. House claims the government is violating the Constitution by retaining this information, a claim he will not be able to fully vindicate unless he can identify *all* governmental entities that now possess his information. Defendants fail to cite a single case in support of their argument, instead speculating that, in some cases, such a requirement "could" compromise law enforcement functions. Defs.' Reply Br. 16. Defendants do not claim that it would have such an effect in this case, eliminating the need for the Court to consider that possibility here.

14

Moreover, the government is wrong to state that this Court lacks the power to order destruction of information the government seized from Mr. House's devices, as there is ample precedent for this practice. By analogy, under Federal Rule of Criminal Procedure 41(g), courts can order the government to return seized property to criminal defendants and have discretion to decide whether it is reasonable for the government to retain copies.[10] Moreover, Mr. House's privacy interest in the seized data also weighs heavily in favor of requiring the government to return the data and destroy all copies. In *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1174 (9th Cir. 2010), the Ninth Circuit upheld an order requiring the government to return illegally seized data on Major League Baseball's drug testing program without retaining copies. The Court noted, "The risk to the players associated with disclosure, and with that the ability of the Players Association to obtain voluntary compliance with drug testing from its members in the future, is very high." *Id.* at 1174. The privacy interests cited by the Ninth Circuit parallel Mr. House's interests in preserving the privacy of information relating to his group's membership and fundraising.

Defendants mistakenly rely on *Illinois v. Krull*, 480 U.S. 340, 347-61 (1987), to suggest that even if this Court finds the search to be unconstitutional, the government should be able to retain the data because ICE agents relied on a policy they thought at the time was valid. Defs.' Reply Br. 16. The good faith exception to the exclusionary rule in *Krull* is not applicable to this situation. An inquiry regarding the return of seized items is different from an inquiry regarding their suppression in a criminal case. *See Comprehensive Drug Testing, Inc.*, 621 F.3d at 1172 (noting the "the crucial distinction between a motion to suppress and a motion for return of

---

[10] The Advisory Committee notes to the 1989 amendments to Rule 41 make clear that in some cases, "equitable considerations might justify an order requiring the government to return or destroy all copies of records that it has seized."

15

property: The former is limited by the exclusionary rule, the latter is not."). The two areas of law serve different interests: the exclusionary rule serves to deter unlawful behavior by law enforcement, while the return of seized property provides a remedy for the individual whose property interests were violated. *Id.* at 1173.

## CONCLUSION

For the foregoing reasons, Defendants' motion should be DENIED.

<div style="margin-left: 50%;">

Respectfully submitted,

DAVID HOUSE
By his attorneys,
___/s/ *Catherine Crump*_____
Catherine Crump, Pro Hac Vice
ccrump@aclu.org
Speech, Privacy and Technology Project
American Civil Liberties Union
125 Broad Street, 17th floor
New York, New York 10004
(212) 549-2500

____/s/ *John Reinstein*_____
John Reinstein, BBO # 416120
jreinstein@aclum.org
Laura Rótolo, BBO # 665247
lrotolo@aclum.org
American Civil Liberties Union
 of Massachusetts
211 Congress Street
Boston, Massachusetts 02110
(617) 482-3170

</div>

December 5, 2011

16

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Catherine Crump*
Catherine Crump
December 5, 2011

17